**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | | |
|---|---|---|
| LOWANDA FEQUIERE, on behalf of herself and all others similarly situated, | ) | |
| Plaintiff(s), | ) | CIVIL ACTION NO.: 1:21-cv-20800 |
| v. | ) | CLASS ACTION |
| THE J.G. WENTWORTH COMPANY, | ) | |
| Defendant(s). | ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW**, Plaintiff, Lowanda Fequiere ("Plaintiff" or "Ms. Fequiere"), on behalf of herself and all others similiary situated, hereby brings this Class Action Complaint and Demand for Jury Trial against Defendant, The J.G. Wentworth Company ("Defendant" or "JGWC"). Plaintiff, based on personal knowledge as to her own conduct, acts, and upon information and belief as to all other matters, alleges as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this class action against Defendant to secure redress for violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 et seq., (the "TCPA").

2. Defendant is a structured settlement or annuity payment purchasing company. To promote its services, Defendant engaged in unsolicited marketing harming thousands of consumers, such as Plaintiff, in the process.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of many individuals. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. §1331 as Plaintiff alleges violations of federal statute, 47 U.S.C. §227 et seq. Jurisdiction is also proper under 28 U.S.C. §1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (One Thousand Five Hundred) Dollars in damages for each call or text message sent in violation of the TCPA, which when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5. This Court has personal jurisdiction over Plaintiff, because Plaintiff submits to the Court's jurisdiction. This Court has personal jurisdiction over Defendant, pursuant to Florida Statutes §48.193(1)(a)(1), (2), and (6), because Defendant is carrying on and conducting substantial business activity in the State of Florida, Defendant committed a tortious act within the State of Florida, and/or Defendant caused injury to persons in the State of Florida arising out of an act(s) or omission(s) outside this state and at or about the time of such injuries Defendant was engaged in solicitation or service activities within this state.

6. Venue is proper in the United States District Court for the Southern District of Florida, pursuant to 28 U.S.C. §1391(a), because a substantial part of the events or omissions giving rise to these claims occurred in this District, the Defendant has caused harm to Plaintiff and the Class Members residing in this District, and the Defendant is a resident of this District under 28 U.S.C. §1391(c)(2) because it is subject to personal jurisdiction in this district.

7. Defendant provides and markets its services within this district, thereby establishing sufficient minimum contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent

the same text messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls or text messages have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

8. Plaintiff is a natural person and a resident of Miami-Dade County, Florida.

9. Defendant, J.G Wentworth is a Delaware corporation with its principal offices located at 1200 Morris Drive, Chesterbrook, PA 19087. Defendants directs, markets, and provides its business services throughout the State of Florida.

## THE TCPA

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether

they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express ***written*** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012) (emphasis added).

15. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. §64.1200(f)(12). In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication. *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id.* (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

19. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003). This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*. *See Id.*

20. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA. *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22. The FCC has also issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending him the ***text message***). (emphasis added).

23. Further, District Courts and the FCC have "repeatedly acknowledged the existence of vicarious liability under the TCPA." See Gomez v. Campbell-Ewald Co., 768 F.3d 871,878(9th Cir. 2014) (citing *In re* Joint Petition Filed by Dish Network, LCC, 28 FCC. Rcd. 6574, 6574 (2013)).

Principles of apparent authority and ratification may also provide a basis for vicarious seller liability for violations of section 227(b). *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678(9th Cir. 2014) (citing 28 F.C.C. Rcd. at 6590 n. 124). A ratification occurs when the benefits of the purportedly unauthorized acts are accepted with full knowledge of the facts under circumstances demonstrating the intent to adopt the unauthorized arrangement. *Stalley v. Transitional Hosps. Corp. of Tampa, Inc.*, 44 So. 3d 627, 631 (Fla. 2d DCA 2010).

**FACTS**

24. On or about November 22, 2019, Defendant sent the following telemarketing text messages to Plaintiff's cellular telephone number ending in 4543 (the "4543 Number"):




25. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

26. Plaintiff is the subscriber and sole user of the 4543 Number and is financially responsible for phone service to the 4543 Number.

27. When a prospective customer, such as Plaintiff, calls the 833-409-0423 (the "0423 Number") numbered contained in Defendant's text message an automated message asks whether he/she currently has a settlement and/or annuity for injuries previously sustained.

28. Upon punching in the number confirming that the individual does have any settlement, consumers like Plaintiff are automatically transferred to the Defendant's offices and are greeted with the recorded message, "[t]hank you for calling JG Wentworth."

29. Once transferred to JG Wenworth, Defendant's employees begin soliciting and selling their services of purchasing structured settlements to Plaintiff.

30. To make matters worse, once consumers like Plaintiff call the 0423 Number and select the option associated with Defendant, they begin receiving a barrage of calls from 484-654-9418 (the "9418 Number").

31. The 9418 Number is owned and operated by Defendant.

32. Defendant's text messages constitute telemarketing because they encouraged Plaintiff and other consumers to dial a number and "turn your injury from a curse to a blessing." The financial and monetary implications about this "blessing" are made very clear by the next sentence, which specifically states see "how much your case can make."

33. Defendant is clearly trying to sell Plaintiff its settlement purchasing services by luring her and other individuals in this District to call a number and find out how much their case can make. Once you call the 0423 Number and select the corresponding option, Defendant begins selling you their annuity purchasing services.

34. Defendant's sole purpose behind sending these text messages is to promote their business.

35. Plaintiff received the subject texts within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district.

36. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district and throughout the nation.

37. At no point in time did Plaintiff provide Defendant with her express written consent to be contacted using an ATDS.

38. The impersonal and generic nature of Defendant's text messages, coupled with the recorded greeting Plaintiff and other individuals hear when calling the 0423 Number, demonstrates that Defendant utilized an ATDS in transmitting the messages. *See e.g. Jenkins v. LL Atlanta, LLC*, No. 1:14-cv-2791-WSD, 2016 U.S. Dist. LEXIS 30051, at *11 (N.D. Ga. Mar. 9, 2016)("These assertions, combined with the generic, impersonal nature of the text message advertisements and the use of a short code, support an inference that the text messages were sent using an ATDS.") (citing *Legg v. Voice Media Grp., Inc.*, 20 F. Supp. 3d 1370, 1354 (S.D. Fla. 2014) (plaintiff alleged facts sufficient to infer text messages were sent using ATDS; use of a short code and volume of mass messaging alleged would be impractical without use of an ATDS); *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165, 1171 (N.D. Cal. 2010) (finding it "plausible" that defendants used an ATDS where messages were advertisements written in an impersonal manner).

39. The text messages originated from telephone number 833-926-1682 (the "1682" Number"), a number which upon information and belief was owned, operated, maintained, or otherwise controlled by Defendant during the relevant time frame.

40. The number used by Defendant (833-926-1682) is known as a "long code," a standard 10-digit phone number that enabled Defendant to send SMS text messages *en masse*, while deceiving recipients into believing that the message was personalized and sent from a telephone number operated by an individual.

41. Long codes work as follows: Private companies known as SMS gateway providers have contractual arrangements with mobile carriers to transmit two-way SMS traffic. These SMS gateway providers send and receive SMS traffic to and from the mobile phone networks' SMS centers, which are responsible for relaying those messages to the intended mobile phone. This allows for the transmission of a large number of SMS messages to and from a long code.

42. Specifically, upon information and belief, Defendant utilized a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant has the current capacity or present ability to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

43. Defendant's unsolicited text messages caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion. Defendant's text messages also inconvenienced Plaintiff and caused disruption to her daily life.

44. When Plaintiff received the unsolicited text message produced above, she was at her place of work as a nurse's assistant.

45. Fearing that the message may be from her younger daughter, Plaintiff was forced to stop what work she was doing when the text message came in, get up to go check her phone, thereby causing specific injury and intrusion to Plaintiff's life and employment.

## CLASS ALLEGATIONS

### PROPOSED CLASS

46. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

47. Plaintiff brings this case on behalf of a Class defined as follows:

> **All persons within the United States who, within the four years prior to the filing of this Complaint, were sent a text message, from Defendant or anyone on Defendant's behalf, to said person's cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent (the "Class").**

48. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more.

49. Plaintiff reserves the right to modify or amend the definition of the proposed the Class before the Court determines whether certification is appropriate and as the Court may otherwise allow.

50. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23.

**NUMEROSITY**

51. Federal Rule of Civil Procedure 23(a)(1): Upon information and belief, Defendant has placed or sent automated text messages and/or prerecorded calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without their prior express consent. Therefore, the members of the Class are believed to be so numerous that joinder of all members is impracticable.

52. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**COMMONALITY**

53. Federal Rule of Civil Procedure 23(a)(2): There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

**(1)** Whether Defendant made non-emergency calls to Plaintiff's and Class members' cellular telephones using an ATDS;

**(2)** Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls;

**(3)** Whether Defendant conduct was knowing and willful;

**(4)** Whether Defendant is liable for damages for violating the TCPA, and the amount of such damages; and

**(5)** Whether Defendant should be enjoined from such conduct in the future.

54. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**TYPICALITY**

55. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of other Class members' claims because they arise from the same course of conduct by the Defendant. The relief Plaintiff seeks is typical of the relief sought for the absent Class members.

**ADEQUATE REPRESENTATION**

56. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the other members of the Class. Plaintiff intends to prosecute this action vigorously. Plaintiff has retained competent and experienced counsel in class action litigation. The Class's interests will be fairly and adequately protected by Plaintiff and her counsel.

**PREDOMINANCE AND SUPERIORITY**

57. Federal Rule of Civil Procedure 23(b)(1): A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

58. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**<u>Violations of the TCPA, 47 U.S.C. § 227(b)</u>**
**(On Behalf of Plaintiff and the Class)**

59. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

60. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii).

61. "Automatic telephone dialing system" refers to any equipment that has the "capacity to dial numbers without human intervention." *See, e.g., Hicks v. Client Servs., Inc.*, No. 07-61822, 2009 WL 2365637, at *4 (S.D. Fla. June 9, 2009) (citing FCC, In re: Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991: Request of ACA International for Clarification and Declaratory Ruling, 07–232, ¶ 12, n.23 (2007)).

62. Defendant – or third parties directed by Defendant – used equipment having the capacity to dial numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

63. These calls and text messages were made without regard to whether or not Defendant had first obtained express permission from the subject party to make such calls or send such messages. In fact, Defendant did not have prior express consent to call or text the cell phones of Plaintiff and the other members of the putative Class when the calls were made, and the messages were sent.

64. Therefore, Defendant has violated §227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

65. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that it was using equipment that at constituted an automatic telephone dialing system. The violations were therefore willful or knowing.

66. As a result of Defendant's conduct and pursuant to §227(b)(3) of the TCPA, Plaintiff and the other members of the putative Class were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

67. Plaintiff and the class are also entitled to an injunction against future calls. *See* 47 U.S.C §227(b)(3).

**WHEREFORE**, Plaintiff, LOWANDA FEQUIERE, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. §227;

a. An injunction prohibiting Defendant from using an automatic telephone dialing system to text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and

d. Such further and other relief the Court deems reasonable and just.

**COUNT II**
**Knowing and/or Willful Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Class)**

68. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

69. At all times relevant, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

70. Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

71. Because Defendant knew or should have known that Plaintiff and Class Members had not given prior express consent to receive its autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to §227(b)(3) of the TCPA.

72. As a result of Defendant's violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. §227(b)(3)(B) and 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, LOWANDA FEQUIERE, on behalf of herself and the other members of the Class, pray for the following relief:

a. A declaration that Defendant's practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. §227;

b. An injunction prohibiting Defendant from using an automatic telephone dialing system to call and text message telephone numbers assigned to cellular telephones without the prior express permission of the called party;

c. An award of actual and statutory damages; and;

d. Such further and other relief the Court deems reasonable and just.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial as to all issues triable by a jury.

Dated: February 26, 2021.

Respectfully submitted,

**THE G LAW GROUP, P.A.**
*Attorneys for the Plaintiff*
429 Lenox Avenue, Suite 442
Miami Beach, FL 33139
Tel: (305) 849-2792
Fax: (786) 460-8333
sgenadiev@theglawgroup.com

By: */s/ Simeon Genadiev*
**SIMEON GENADIEV, ESQ.**
Florida Bar No.: 100918